## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DANIEL S. KADIN,

        Plaintiff,

        v.

ROBINHOOD FINANCIAL, LLC,
ROBINHOOD SECURITIES, LLC and
ROBINHOOD MARKETS, INC.,

        Defendants.

CASE NO. 1:21-cv-2566

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

        Plaintiff Daniel S. Kadin, individually and on behalf of all others similarly situated, makes the following allegations upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are based on his personal knowledge.

## NATURE OF THE ACTION

        1.     This is a class action brought against Robinhood Financial, LLC ("Robinhood Financial"), Robinhood Securities, LLC ("Robinhood Securities"), Robinhood Markets, Inc. ("Robinhood Markets"), (collectively, "Robinhood") for prohibiting their customers from buying multiple publicly traded stock options, including but not limited to GameStop ("GME"), AMC Entertainment ("AMC"), Nokia ("NOK"), BlackBerry Limited ("BB"), Bed Bath & Beyond ("BBBY"), Express ("EXPR"), Koss Corporation ("KOSS"), and Naked Brand Group ("NAKD") (collectively, the "Stocks"), during an unprecedented rise in valuation of the aforementioned Stocks.

        2.     Robinhood is a multi-billion-dollar online brokerage firm founded in 2013. Robinhood's popularity has soared among retail investors and has amassed an estimated 13

million users. However, none of those users were able to purchase the publicly traded Stocks on Robinhood's platform during the dates in question.

3.      Robinhood's actions not only deprived its customers from taking advantage of the rise of the Stocks valuation, but also manipulated the free and open market: causing a substantial decrease in the Stocks valuation, in violation of federal securities laws and state common law.

4.      Furthermore, in order to distinguish itself from competitors, Robinhood engaged in an aggressive marketing campaign promoting its "commission free trading." This purported advantage, however, came with a catch: Robinhood's customers, such as Plaintiff Kadin, received inferior execution prices compared to what they would have received from Robinhood's competitors. In fact, the difference in execution price typically exceeded the commission Robinhood's competitors would have charged.

5.      As is set forth more particularly below, Plaintiff Kadin and the proposed class members are consumers who were subject to Robinhood's unfair and deceptive practices. Robinhood's violations, as alleged herein, have harmed Plaintiff Kadin and the public at large. Plaintiff Kadin seeks to vindicate their rights.

## PARTIES

6.      Plaintiff Daniel S. Kadin is a New York resident who lives in New York, New York.

7.      Defendant Robinhood Financial, LLC is a Delaware LLC with a principal place of business located at 85 Willow Road, City of Menlo Park, California.

8.      Defendant Robinhood Financial is a brokerage firm regulated by the Financial Industry Regulatory Authority, Inc. ("FINRA").

9. Defendant Robinhood Securities, LLC is a Delaware LLC with a principal place of business located at 85 Willow Road, City of Menlo Park, California. Defendant Robinhood Securities is a brokerage firm regulated by FINRA.

10. Defendant Robinhood Markets, Inc. is a Delaware Corporation with a principal place of business located at 85 Willow Road, City of Menlo Park, California.

11. Because all of the above Defendants function as a single economic enterprise, they are jointly and severally liable under principles of direct, vicarious, and agency liability for each one of the violations laid out in this Complaint. As such, the below factual allegations refer to Defendants, collectively, as "Robinhood" in connection to the violations mentioned therein.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 because this action arises out of a federal statute: Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC. This court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class members is a citizen of a different state than Defendants; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

13. This Court also has supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367, because these claims are so related to the SEC federal claim that they form part of the same case or controversy under Article III of the United States Constitution.

14. This Court has personal jurisdiction over Robinhood because it is authorized to do business and does conduct business in New York, and because it has specifically marketed,

advertised, and made substantial sales in New York, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District where Robinhood distributed, marketed, advertised, and sold the trading services which are the subject of this Complaint.

## FACTUAL ALLEGATIONS

### Defendants Violated their Broker-Dealer Duty of Best Execution

16.    Robinhood offers self-directed securities brokerage services to customers by means of its website and smartphone applications. Defendants are commission-registered broker-dealers and members of FINRA.

17.    Robinhood Financial acts as an introducing broker and has a clearing arrangement with Robinhood Securities. Beginning in November 2019, Robinhood began sending all customer orders for trade execution to Robinhood Securities. When customers open accounts with Robinhood, they enter into a customer agreement with Robinhood Financial and Robinhood Securities.

18.    Pursuant to FINRA rule 5310, broker-dealers, such as Robinhood, owe their customers a duty of "best execution." Best execution requires that a broker-dealer endeavor to execute customer orders on the most favorable terms reasonably available in the market under the circumstances.

19.     In midyear of 2018, Robinhood first introduced its payment from order flows as its principal sources of income in its FAQ page, amidst growing criticism of its secretive and conflict-ridden business structure.

**What is the execution quality for orders on Robinhood?**

Reg NMS ensures your order gets executed at the national best bid and offer, or better, at the time of execution. Our execution quality and speed matches or beats what's found at other major brokerages. Even when measured at the time of routing, our customers' orders get executed at the NBBO or better. By way of example, in August 2018, 99.12% of our customers' marketable orders were executed at the the national best bid and offer or better with an execution speed of 0.08 seconds from routing to execution (for S&P 500 stocks, during market hours).

20.     The new FAQ page also addressed how Robinhood's order flows stacked up against competitors, stating that it's "execution quality and speed matches or beats what's found at other major brokerages." Robinhood also cited one statistic related to execution speed and one statistic related to the percentage of orders for S&P 500 stocks executed within the NBBO.

21.     Internal analyses conducted in October 2018 and March 2019, however, revealed that Robinhood's execution quality was worse than other large retail broker-dealers in many respects. In particular, in October of 2018, Robinhood personnel remarked that most of Robinhood's metrics were worse than what it had initially advertised.

22.     Similarly, in March of 2019,  Robinhood conducted a more extensive analysis which revealed that "[n]o matter how we cut the data, our % orders receiving price improvement lags behind that of other retail brokerages by a wide margin." The analysis concluded that most of its customers would likely be able to execute orders at better prices through other broker-dealers. A complaint filed by the SEC against Robinhood revealed that Robinhood's customers lost more than $34 million dollars as a result of Robinhood's sub-par execution rates.

***The 2021 Short Squeeze***

23.     Robinhood's ulterior motives, and the reason behind their lagging execution rates, first came to light during the January 2021 short squeeze saga: where their allegiance to its highest paying market-makers, such as Citadel, became apparent.

24.     On or about January 11, 2021, stocks of GME, AMC, and NOK, among others (the "Stocks") began to rise,  jeopardizing the trades of major institutional investors and hedge funds who had shorted those Stocks betting that their price would drop (the "Short Squeeze"). However, on or around January 28, 2021, the Stocks were no longer available for purchase from retail investors on Robinhood's platforms. For example, Robinhood's platform featured an icon that read "This stock is not supported on Robinhood":



25.     Robinhood prohibited the purchase of the Stocks by its retail investors purposefully, knowingly, and willingly.

*Robinhood's Ulterior Motives*

26.     Robinhood derives its primary source of income through a practice known as "payment order flow." Specifically, "Robinhood makes money by passing its customer trades along to large market-making firms, like Citadel, which pay Robinhood for the chance to fulfill its customer stock orders[.]"[1]  Robinhood reportedly receives 17 cents per hundred equity trades, and 58 cents per hundred options trades.[2] Robinhood made $180 million during the second quarter of 2020 alone, with over $110 million of that coming from options trades.[3]

27.     Robinhood's largest market-making firm is Citadel Securities, LLC: with whom it transacts the majority of its orders on the New York Stock Exchange.[4] The parent company of Citadel Securities, LLC is Citadel Enterprise Americas, LLC (collectively, "Citadel").

28.     As a result of the Short Squeeze, the trades being placed on Robinhood's platform created disastrous exposure to institutional investors who had shorted the Stocks. Amongst these investors was Melvin Capital, over whom Citadel holds a significant ownership stake. In order to compensate for Melvin Capital's losses from the Short Squeeze, Citadel was forced to bail out the company at the tune of $2 billion dollars.[5]

29.     As a result of the strong ties between Robinhood and Citadel, Citadel swayed Robinhood to stop trading the Stocks. Before doing so, however, Citadel reloaded its short

---

[1]See Kate Kelly, et al., Robinhood, in Need of Cash, Raises $1 Billion From Its Investors, N.Y. Times (Feb. 1, 2021), https://www.nytimes.com/2021/01/29/technology/robinhood-fundraising.html; Kate Rooney & Maggie Fitzgerald, Here's how Robinhood is raking in record cash on customer trades – despite making it free, CNBC (Aug. 14, 2020, 10:17 AM), https://www.cnbc.com/2020/08/13/howrobinhood-makes-money-on-customer-trades-despite-making-it-free.html.
[2]Kelly. *Id.*
[3]Rooney. *Id.*
[4]https://cdn.robinhood.com/assets/robinhood/legal/RHS%20SEC%20Rule%20606a%20and%20607%20Disclosure%20Report%20Q4%202020.pdf
[5]https://www.bloomberg.com/news/articles/2021-01-31/the-citadel-link-what-ken-griffin-has-to-do-with-gamestop

positions in order to recoup some of its losses. Specifically, after the market closed on Wednesday, January 27, 2021, after-hours trades revealed suspicious coordinated trading activity.[6] Analytics showed that after-hour traders were taking more short positions in anticipation of a mass GME selloff. As demonstrated by the grey lines below, the volume of short positions was much higher before January 28, 2021 than on any of the prior days and had steadily increased the week prior:



30.     The Stock prices, in turn, increased in price at approximately 11:00-11:30 a.m on January 28, 2021 before taking a deep dive when Robinhood's restrictions took effect as the markets opened:

---

[6] After-hours trading is not permitted for individual retail investors and is restricted to institutional investors such as Citadel.



31.     The coordinated trading activity of the Stocks immediately prior to Robinhood's restrictions raises a strong inference that Robinhood tipped off their principal market-makers, such as Citadel, in furtherance of their pecuniary interests.

*Robinhood's Clearinghouse Self Serving Interests*

32.     Robinhood's scienter is further demonstrated by the exposure that it faced as a result of the Short Squeeze.

33.     Because it takes two days to execute a trade, Robinhood is required to use clearinghouses to guard against the risks of defaults between buyers and sellers of securities. In so doing, clearinghouses "stand between two parties in a trade to guarantee payment if either side reneges."[7] To protect against default risks, "clearinghouses require their members—banks and

---

[7]https://www.marketwatch.com/discover?url=https%3A%2F%2Fwww.marketwatch.com%2Fam%20p%2Fstory%2Fpeterffy-calls-robinhood-decision-to-allow-limited-buys-of-gamestop-troublingim-%20not-comfortable-%2011611876619&link=sfmw_tw#https://www.marketwatch.com/amp/story/peterffy-callsrobinhood-%20decision-to-allow-limited-buys-of-gamestop-troubling-im-not-comfortable-%2011611876619?mod=dist_amp_social%20 (last visited 01/31/21).

Class Action Complaint

brokers—to be well-capitalized, to deposit collateral and to pay into a default fund."[8] These deposits are determined, amongst other things, based on the volume of trades placed by a broker and the volatility of the stocks being traded. As a result of the Short Squeeze, the National Securities Clearing Corporation ("NSCC") requested Robinhood to post $3 billion dollars in cash as collateral for trades of the Stocks. The increased collateral demand by NSCC, according to Robinhood, was the motivating force behind their decision to restrict the Stocks:

> The amount required by clearinghouses to cover the settlement period of some securities rose tremendously this week. How much? To put it in perspective, this week alone, our clearinghouse-mandated deposit requirements related to equities increased ten-fold. And that's what led us to put temporary buying restrictions in place on a small number of securities that the clearinghouses had raised their deposit requirements on.[9]

34.     In discussing the decision to restrict the Stock, Mr. Tenev, Robinhood CEO, said "we knew this was a bad outcome for customers."[10]

35.     Robinhood's statements, along with the circumstantial evidence surrounding the after-hour trades prior to their restrictions of the Stocks, would lead a reasonable person to deem Plaintiff's allegations of scienter as cogent and at least as compelling as any opposing inferences.

36.     Plaintiff specifically relied, to his detriment, on Robinhood's promise that by using their application he would be able to freely trade securities, including the Stocks.

37.     Plaintiff and the proposed Class member are also entitled to a presumption of reliance based on the "fraud-on-the-market presumption." Plaintiff and the proposed Class members justifiably relied on a free and open market for the Stocks. There was no reason to believe that Robinhood would interfere with that market.

---

[8] *Id.*
[9] https://blog.robinhood.com/news/2021/1/29/what-happened-this-week (last visited 03/17/21).
[10] https://9to5mac.com/2021/02/01/robinhood-trading-restrictions/ (last visited 03/17/21).

38.     Plaintiff and the proposed Class members directly suffered as a result of Robinhood's securities fraud. As a result of Robinhood's trading restrictions, the price of the Stocks immediately plummeted: proving loss causation.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on behalf of himself and all other similarly situated persons as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

40.     The class periods shall be defined from the date of the filing of this Complaint, back to any such time that the Court deems appropriate.

41.     Plaintiff seeks to represent the following Nationwide Classes:

Nationwide Best Execution Class:

All persons within the United States who maintained a Robinhood account from September 1, 2016 through the present who executed market orders for which Robinhood received payment for order flows.

Nationwide Short Squeeze Class:

All persons within the United States who maintained a Robinhood account from January 1, 2021 through the present who were restricted from purchasing the Stocks.

42.     Plaintiff also seeks to represent the following subclasses (collective the "New York Subclass"):

New York Best Execution Class:

All persons within the state of New York who maintained a Robinhood account from September 1, 2016 through the present who executed market orders for which Robinhood received payment for order flows.

New York Short Squeeze Class:

All persons within the state of New York who maintained a Robinhood account from January 1, 2021 through present who were restricted from purchasing the Stocks.

43.     Plaintiff reserves the right to amend the above class definitions and to add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

44.     ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

45.     ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, membership in the Classes is ascertainable based upon the records maintained by Robinhood. At this time, Plaintiff is informed and believes that the Classes include thousands of members. Therefore, the Classes are sufficiently numerous that joinder of all members of the Classes in a single action is impracticable under Federal Rule of Civil Procedure Rule 23(a)(1), and the resolution of their claims through the procedure of a class action will be to the benefit of the parties and the Court.

46.     ***Ascertainability***: Names and addresses of members of the Classes are available from Robinhood's records. Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under state law and federal law.

47.     ***Typicality:*** Plaintiff claims are typical of the claims of the other members of the Classes which they seek to represent under Federal Rule of Civil Procedure 23(a)(3) because Plaintiff and each member of the Classes held an account with Robinhood and were prohibited

from purchasing the Stocks on or around January 28, 2021 onward. There are no defenses that Robinhood may have that are unique to Plaintiff.

48.    *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action.

49.    *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

(a) The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

(b) If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members to seek to redress their claims other than through the procedure of a class action; and

(c) Absent a class action, Robinhood likely would retain the benefits of its wrongdoing, and there would be a failure of justice.

50.    Common questions of law and fact exist as to the members of the Classes, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions which affect individual members of the Classes within the meaning of Federal Rule of Civil Procedure 23(b)(3). Such questions include, but are not limited to, the following:

(a)      Whether Robinhood breached its fiduciary duty and duty of best execution by maximizing its order flow profits at the expenses of its customers;

(b)      Whether Robinhood violated federal securities laws by restricting trades of the Stocks on their platforms;

(b)      Whether Robinhood's conduct violated New York's consumer protection laws;

(c)      Whether Robinhood's conduct constitutes a breach of contract;

(e)      Whether Robinhood's conduct constitutes a breach of its implied covenant of good faith and fair dealing;

(f)      whether Plaintiff and the Classes have suffered damages as a result of Robinhood's actions and the amount thereof;

(g)      whether Plaintiff and the Classes are entitled to statutory damages;

(h)      whether Plaintiff and the Classes are entitled to restitution;

(i)      whether Plaintiff and the Classes are entitled to injunctive relief to enjoin Robinhood from further engaging in these wrongful practices; and

(j)      whether Plaintiff and the Classes are entitled to attorney's fees and costs.

## CAUSES OF ACTION

### COUNT I
**Breach of Contract**
**(On Behalf Of Plaintiff And The Short Squeeze Nationwide Class)**

51.      Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

52.      To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood "[i]n consideration of Robinhood . . . opening one or more accounts

on [his or her] behalf . . . for the purchase, sale, or carrying of securities or contracts relating thereto."[11]

53.     Plaintiff and the proposed Class members all entered into the Customer Agreement with Robinhood and performed under its terms.

54.     Robinhood breached the Customer Agreement with Plaintiff and the proposed Class members on January 28, 2021, by preventing all of its users from buying, but not selling, the Stocks.

55.     Robinhood also breached its Customer Agreement in the following ways: (1) by not disclosing that it would arbitrarily restrict specific broadly traded securities from being purchased on its trading platform; (2) by failing to provide an adequate explanation to Plaintiff and the proposed Class members as to why the restricted Stocks could be sold but not bought; (3) by knowingly putting Plaintiff and the proposed Class members at a disadvantage to other investors who were still able to buy the Stocks; (4) by preventing Plaintiff and the proposed Class members from performing trades in a timely manner or at all; and (5) by failing to comply with applicable legal, regulatory, or licensing requirements for a stock broker.

56.     Robinhood's breach damaged Plaintiff and the members of Class by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiff and the proposed Class members from buying shares of the Stocks that decreased on January 28, 2021.

---

[11] Robinhood Financial LLC & Robinhood Securities, LLC Customer Agreement, Robinhood at 1,https://cdn.robinhood.com/assets/robinhood/legal/Robinhood%20Customer%20Agreement.pdf (last revised Dec. 30, 2020).

## COUNT II
**Breach of Implied Covenant of Good Faith & Fair Dealing**
**(On Behalf Of Plaintiff And The Short Squeeze Nationwide Class)**

57.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58.     To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood.

59.     Plaintiff and the proposed Class members all entered the Customer Agreement with Robinhood and performed under its terms.

60.     Robinhood had an implied duty of good faith and fair dealing to refrain from interfering with Plaintiff's and the proposed Class members' ability to purchase securities.

61.     Robinhood breached its implied duty on January 28, 2021, when it prevented all its users from buying the Stocks, thereby interfering with Plaintiff's and the proposed Class members' ability to purchase securities and frustrating Plaintiff's and the proposed Class members' rights to the benefits of the Customer Agreement, specifically by: (1) failing to provide services necessary to timely execute a trade on the stock market; (2) failing to allow Plaintiff and the proposed Class members to trade certain securities at all; (3) failing to inform Plaintiff and the proposed Class members in a timely and effective manner about the dramatic changes to users abilities to purchase the Stocks; and (4) by prohibiting Plaintiff and the proposed Class members from buying the Stocks due to for Robinhood's own pecuniary interests and not disclosing that interest to Plaintiff or the other members of the Class.

62.     Robinhood acted in bad faith by placing its own pecuniary interests, and/or the interests of others—including, potentially, various Citadel entities—above the interests of Plaintiff and the proposed Class members.

63.     Robinhood acted in bad faith when it claimed that "market volatility" justified its restrictions.

64.     Robinhood's breach damaged Plaintiff and the proposed Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiff and the proposed Class members from buying shares of the Stocks that decreased on January 28, 2021.

<u>**COUNT III**</u>
**Breach of Fiduciary Duty**
**(On Behalf Of Plaintiff And The Nationwide Short Squeeze Class)**

65.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     As a broker dealer and provider of financial services, Robinhood was a fiduciary to Plaintiff and the proposed Class members. As such, Robinhood owed them the highest duty of good faith and integrity in performing financial services and acting as securities brokers on their behalf.

67.     As described herein, Robinhood breached its fiduciary duties to Plaintiff and the proposed Class members when it prevented all its users from buying the Stocks, thereby interfering with Plaintiff's and the proposed Class members' ability to purchase securities and frustrating Plaintiff's and the proposed Class members' rights to the benefits of the Customer Agreement, specifically by: (1) failing to provide services necessary to timely execute a trade on the stock market; (2) failing to allow Plaintiff and the proposed Class members to trade certain securities at all; (3) failing to inform Plaintiff and the proposed Class members in a timely and effective manner about the dramatic changes to users abilities to purchase the Stocks; and (4) by prohibiting Plaintiff and the proposed Class members from buying the Stocks due to

Robinhood's own pecuniary interests and not disclosing that interest to Plaintiff or other members of the Class.

68.     Robinhood acted in bad faith by placing its own pecuniary interests, and/or the interests of others—including, potentially, various Citadel entities—above the interests of Plaintiff and the proposed Class members.

69.     Robinhood acted in bad faith when it claimed that "market volatility" justified its restrictions.

70.     Robinhood's breach damaged Plaintiff and the proposed Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by preventing Plaintiff and the proposed Class members from buying shares of the Stocks that decreased on January 28, 2021.

<u>**COUNT IV**</u>
**Common Law Negligence**
**(On Behalf Of Plaintiff And The Nationwide Short Squeeze Class)**

71.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

72.     Robinhood had a duty to exercise reasonable care in conducting and facilitating transactions for its users.

73.     Robinhood breached its duty to exercise reasonable care when, on January 28, 2021, Robinhood restricted Plaintiff and the proposed Class members from purchasing the Stocks, without warning, even though the value of the Stocks was increasing during the dates leading up to January 28, 2021.

74.     Robinhood's breach foreseeably damaged Plaintiff and the proposed Class members by causing the value of the Stocks to go down on January 28, 2021, and/or by

preventing Plaintiff and the proposed Class members from buying shares of the Stocks that decreased on January 28, 2021.

## COUNT V
### Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5
### (On Behalf Of Plaintiff And The Nationwide Short Squeeze Class)

75.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

76.     This Count is brought under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC.

77.     Robinhood committed a manipulative act by restricting trading of the Stocks on their platforms, as described above. Robinhood permitted only selling of the Stocks followed by limited buying, and, by doing so, manipulated the market and impacted the value of the Stocks.

78.     Further, Robinhood made material misrepresentations and/or omissions regarding its users ability to execute orders on its platform, including the Stocks, without any restrictions.

79.     Robinhood acted with scienter because they knew that their conduct would cause harm to Plaintiff and the proposed Class members, and proceeded to manipulate the market regardless.

80.     Perhaps the clearest evidence of Robinhood's scienter is that its CEO publicly admitted that he and Robinhood knew that its actions would be harmful to its customers, and restricted selling of the Stocks fully aware of this fact.

81.     Further, given the increase in shorts and coordinated trading activity prior to Robinhood's restrictions on the Stocks, it is clear that Robinhood leaked information to some of its business partners, such as Citadel, thus intentionally manipulating and interfering with the market in violation of the law.

82.     Plaintiff and the proposed Class members relied on Robinhood's representations and/or omissions to their detriment. Specifically, Plaintiff and the proposed Class members relied on Robinhood's representations and promises that they would have free and open access to the markets, including the Stocks. Further, Plaintiff and the proposed Class members are entitled to a presumption of reliance based on the fraud- on-the-market presumption. Specifically, Plaintiff and the proposed Class members had the right to rely on a free and open market for the Stocks at issue (i.e. a market free of manipulation).

83.     Plaintiff and the proposed Class members suffered damages as a direct and proximate result of Robinhood's conduct, to wit a rapid and precipitous decline in the value of the Stocks directly caused by Robinhood's conduct.

84.     As a result of Robinhood's securities violations, Plaintiff and the proposed Class members are entitled to damages, statutory damages, and attorney's fees and costs.

<u>**COUNT VI**</u>
**Negligent Misrepresentation**
**(On Behalf Of Plaintiff And The Best Execution Class)**

85.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.     Robinhood represented to Plaintiff and the proposed Class members that Robinhood provides commission free trading at an execution price comparable to its competitors. Such statements constitute material facts represented by Robinhood to Plaintiff and the proposed Class members that Robinhood knew or should have known were not true.

87.     Robinhood, including senior Robinhood personnel, knew that these representations were not true, as they specifically negotiated unusually high payment for order

flow rates with principal trading firms. Robinhood knew or should have known that its payment for order flow system resulted in inferior execution quality compared to its competitors.

88.    Robinhood intentionally concealed, and removed, any information concerning their payment from order flows.

89.    Robinhood never intended to provide consumers commission free trading at execution prices comparable to its competitors. Robinhood knew or should have known that, due to its unusually high payment for order flows, its inferior execution quality typically exceeded the commission charged by its competitors.

90.    The principal trading firms could have offered Robinhood's clients better execution quality, including the opportunity for price improvement, if not for Robinhood's unusually high payment of order flows.

91.    Robinhood marketed to the general public its commission free trading as a way to differentiate itself from competitors. Robinhood intended for Plaintiff and the proposed Class members to rely on such representations.

92.    Robinhood's breach damaged Plaintiff and the proposed Class members by depriving them of the full benefit of executing their trades through Robinhood's platform.

**COUNT VII**
**Breach of Implied Covenant of Good Faith & Fair Dealing**
**(On Behalf Of Plaintiff And The Nationwide Best Execution Class)**

93.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

94.    To use the Robinhood trading platform, a potential user must enter the Customer Agreement with Robinhood.

95.     Plaintiff and the proposed Class members all entered the Customer Agreement with Robinhood and performed under its terms.

96.     Robinhood had an implied duty of good faith and fair dealing to execute the orders placed by Plaintiff and the proposed Class members at the most favorable terms reasonably available in the market under the circumstances.

97.     Robinhood breached its implied duty of good faith and fair dealing by passing on the orders placed by Plaintiff and the proposed Class members to a select group of market-makers, such as Citadel, solely to increase its profits at the expense of its customers.

98.     Robinhood's breach damaged Plaintiff and the proposed Class members by depriving them of the full benefit of executing their trades through Robinhood's platform.

### COUNT VIII
**Breach of Fiduciary Duty**
**(On Behalf Of Plaintiff And The Nationwide Best Execution Class)**

99.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

100.    As a broker dealer and provider of financial services, Robinhood was a fiduciary to Plaintiff and the proposed Class members. As such, Robinhood owed them the highest duty of good faith and integrity in performing financial services and acting as securities brokers on their behalf.

101.    As described herein, Robinhood breached its fiduciary duties to Plaintiff and proposed Class members by failing to provide adequate trade execution quality by prioritizing its own profits through an unusually high payment for order flow trades at the expense of its customers.

102.    Robinhood's breach damaged Plaintiff and the proposed Class members by depriving them of the full benefit of executing their trades through Robinhood's platform.

### COUNT IX
### Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5
### (On Behalf Of Plaintiff And The Nationwide Best Execution Class)

103.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    This Count is brought under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78(j)(b), and Rule 10b-5 promulgated thereunder by the SEC.

105.    Section 10(b) provides, in pertinent part, "It shall be unlawful…[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange…any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary and appropriate in the public interest or for the protection of investors."

106.    Rule 10b-5 provides, in pertinent part, "It shall be unlawful…(a) [t]o employ any…scheme…to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

107.    Robinhood had a duty to disseminate timely, accurate, and truthful information with respect to its routing and execution quality of customer orders.

108.     In breach of that duty, Robinhood made multiple material misrepresentations and/or omissions relating to its sub-par execution rates and receipt of unusually high order flow payments.

109.     Specifically, Robinhood misrepresented that it engaged in commission free trading at an execution price comparable to its competitors.

110.     Robinhood made the above material misrepresentations and/or omissions with scienter. Robinhood, including senior Robinhood personnel, knew that their unusually high payment for order flow rates with principal trading firms, such as Citadel, resulted in inferior execution quality compared to its competitors.

111.     Further, Robinhood order flow payment scheme, as alleged herein, constitutes market manipulation.  Robinhood's unusually high order flow rates with market makers, such as Citadel, resulted in uniform inferior execution quality on those orders compared to the execution quality of other principal trading firms in the market.

112.     Plaintiff and the proposed Class members relied on Robinhood's misrepresentations and/or omissions to their detriment. Specifically, Plaintiff and the proposed Class members relied on Robinhood's representations and/or omissions that Robinhood was executing their orders in compliance with its broker dealer duty of best execution. Had Plaintiff and members of the proposed Class members been aware of Robinhood's order flow payment scheme, they would not have chosen to open a brokerage account and execute market orders with Robinhood.

113.      Further, Plaintiff and the proposed Class members are entitled to a presumption of reliance based on the fraud- on-the-market presumption.

114.     Plaintiff and the proposed Class members suffered damages as a direct and proximate result of Robinhood's conduct which deprived them of the full benefit of executing their trades through Robinhood"'s platform.

115.     As a result of Robinhood's securities violations, Plaintiff and the proposed Class members are entitled to damages, statutory damages, and attorney's fees and costs.

<u>**COUNT X**</u>
**Violation Of The New York General Business Law § 349**
**(On Behalf Of Plaintiff And The New York Subclass)**

116.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

117.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

118.     In its sale of goods throughout the State of New York, Robinhood conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

119.     Plaintiff and members of the New York Subclass are consumers who purchased products from Robinhood for their personal use.

120.     By the acts and conduct alleged herein, Robinhood has engaged in deceptive, unfair, and misleading acts and practices, directed at consumers, which include, without limitation, misleading consumers into believing that they would be able to freely trade on Robinhood's application and that Robinhood would execute their trades in accordance with their duty of best execution.

121.     The foregoing deceptive acts and practices were directed at consumers.

122.     The foregoing deceptive acts and practices were misleading in a material way because they constituted material misrepresentations and/or omissions regarding the characteristics and quality of Robinhood's trading platform to induce consumers to use the same.

123.     Because of this conduct, Robinhood engaged in deceptive conduct in violation of New York's General Business Law. Robinhood's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff and members of the New York Subclass have sustained from having paid for and used Robinhood's platform.

124.     As a result of Robinhood's violations, Plaintiff and members of the New York Subclass have suffered damages because they would not have used Robinhood's application and/or purchased the Stocks had they known that Defendants' would interfere with their investments and that it failed, and continues to fail, to honor its duty of best execution.

125.     As a result of Robinhood's violations, Plaintiff and the members of the New York Subclass are entitled to actual damages, statutory damages, and attorney's fees and costs.

**COUNT XI**
**Violation Of The New York General Business Law § 350**
**(On Behalf Of Plaintiff And The New York Subclass)**

126.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

127.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

128.     Robinhood violated New York General Business Law § 350 by falsely advertising to Plaintiff and the New York Subclass that they would be able to freely purchase the Stocks without any restrictions. Similarly, Defendants violated New York General Business Law § 350 by falsely advertising that they would execute their orders based on their duty of best execution,

despite their conflicted allegiance to Citadel and other market makers from which they received inflated order flow payments.

129.    As a result of Robinhood's material misrepresentations and omissions, Plaintiff and members of  the New York Subclass have suffered damages because they would not have used Robinhood's application and/or purchased the Stocks had they known that Defendants' would interfere with their investments and that it failed, and continues to fail, to honor its duty of best execution.

130.    As a result of Robinhood's violations, Plaintiff and the members of the New York Subclass are entitled to actual damages, statutory damages, and attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)      For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff Kadin as representatives of the Classes; and naming Plaintiffs' attorney as Class Counsel to represent the Classes;

(b)      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)      For prejudgment interest on all amounts awarded;

(e)      For an order of restitution and all other forms of equitable monetary relief;

(f)      For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiff and the Classes their reasonable attorney's fees and expenses and costs of suit.

<strong><u>DEMAND FOR TRIAL BY JURY DEMAND</u></strong>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: March 25, 2021                    Respectfully submitted,

**GUCOVSCHI LAW, PLLC.**

By:      */s/ Adrian Gucovschi*
              Adrian Gucovschi, Esq.

Adrian Gucovschi, Esq.
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschi-law.com

*Attorney for Plaintiff*